FILED

1   DANIEL G. BATH, P.C., SB# 119514
     E-Mail: bath@lbbslaw.com
2   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
     221 North Figueroa Street, Suite 1200
3   Los Angeles, California 90012
     Telephone: (213) 250-1800
4   Facsimile: (213) 250-7900

2009 AUG 12 PM 4: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

5   Attorneys for CitiMortgage, Inc., a corporation

BY _____

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11   LEON OLSHEVER, an individual,
     HOLLY OLSHEVER, an individual,

     CASE NO. CV09 05901 FMC (JEMx)

12          Plaintiffs,

13      v.

14   CITIMORTGAGE, INC., a corporation,
     VERDUGO TRUSTEE SERVICE
15   CORPORATION, a corporation,
     MORTGAGE ELECTRONIC
16   REGISTRATION SYSTEMS, INC., a
     corporation, CR TITLE SERVICES,
17   INC., a corporation, FIRST AMERICAN
     TITLE INSURANCE COMPANY, a
18   corporation, ALLSTATE BANCORP,
     INC., a corporation, MARK ALAN
19   PRIMACK, an individual, Los Angeles
20   County Recorder, a public entity, and DOES
     1-50, inclusive Defendants.

**DEFENDANT CITIMORTGAGE,
INC.'S NOTICE OF REMOVAL OF
ACTION**

TRIAL DATE:       None Set

22   TO THE CLERK OF THE ABOVE-ENTITLED COURT:

23       PLEASE TAKE NOTICE that Defendant CitiMortgage, Inc. hereby removes

24   to this Court the state court action described below:

25       1.      On July 27, 2009, an action was commenced in the Los Angeles

26   Superior Court of California, entitled <u>Leon Olshever, et al. v. CitiMortgage, Inc., et</u>

27   <u>al.</u>, Los Angeles Superior Court Case No. LC086326. A true and correct copy of

28   Plaintiff's Complaint in the <u>Leon Olshever, et al. v. CitiMortgage, Inc., et al.</u> action

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

4834-8681-6004.1         -1-

DEFENDANT CITIMORTGAGE, INC.'S NOTICE OF REMOVAL OF ACTION

1  DANIEL G. BATH, P.C., SB# 119514
       E-Mail: bath@lbbslaw.com
2  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   221 North Figueroa Street, Suite 1200
3  Los Angeles, California 90012
   Telephone: (213) 250-1800
4  Facsimile: (213) 250-7900

5  Attorneys for CitiMortgage, Inc., a corporation

6

7

8                 UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 LEON OLSHEVER, an individual,        ) CASE NO. _____
   HOLLY OLSHEVER, an individual,       )
12                                       )
            Plaintiffs,                   )
13                                       )
        v.                               ) **DEFENDANT CITIMORTGAGE,**
14                                       ) **INC.'S NOTICE OF REMOVAL OF**
   CITIMORTGAGE, INC., a corporation,    ) **ACTION**
15 VERDUGO TRUSTEE SERVICE               )
   CORPORATION, a corporation,          )
16 MORTGAGE ELECTRONIC                   )
   REGISTRATION SYSTEMS, INC., a         )
17 corporation, CR TITLE SERVICES,       )
   INC., a corporation, FIRST AMERICAN   ) TRIAL DATE:        None Set
18 TITLE INSURANCE COMPANY, a            )
   corporation, ALLSTATE BANCORP,       )
19 INC., a corproation, MARK ALAN        )
   PRIMACK, an individual,              )
20                                       )
            Defendants.                   )
21 _____)

22 TO THE CLERK OF THE ABOVE-ENTITLED COURT:

23       PLEASE TAKE NOTICE that Defendant CitiMortgage, Inc. hereby removes

24 to this Court the state court action described below:

25       1.      On July 27, 2009, an action was commenced in the Los Angeles

26 Superior Court of California, entitled <u>Leon Olshever, et al. v. CitiMortgage, Inc., et</u>

27 <u>al.</u>, Los Angeles Superior Court Case No. LC086326.  A true and correct copy of

28 Plaintiff's Complaint in the <u>Leon Olshever, et al. v. CitiMortgage, Inc., et al.</u> action

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**

1  is attached hereto as Exhibit "A."

2      2.      Attached as Exhibit "B" is a true and correct copy of Plaintiff's Ex Parte

3  Motion 1) For an Order to Show Cause; and 2) For a Temporary Restraining Order

4  filed on July 27, 2009, in the <u>Leon Olshever, et al. v. CitiMortgage, Inc., et al.</u> action.

5      3.      Attached as Exhibit "C" is a true and correct copy of the Notice of

6  Decision re: Plaintiff's Ex Parte Appearance on July 27, 2009.

7      4.      CitiMortgage, Inc. was served less than thirty days from filing the

8  instant notice of removal.

9      5.      This action is a civil action of which this Court has original jurisdiction

10  under 28 U.S.C. § 1331, and is one which may be removed to this Court by

11  Defendant CitiMortgage, Inc. pursuant to the provisions of 28 U.S.C. § 1441(b) in

12  that it arises under the Truth in Lending Act ("TILA") 15 U.S.C. § 1635(a).

13      6.      Defendant believes that no other parties have been served, and when

14  these other parties have been served they will join in this notice of Removal.

15

16  DATED:  August _12_, 2009        LEWIS BRISBOIS BISGAARD & SMITH LLP

17

18                                  By_____

19                                      Daniel G. Bath, P.C.
                                        Attorneys for CitiMortgage, Inc., a corporation

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP

**EXHIBIT A**

 CT Corporation

**Service of Process Transmittal**
07/30/2009
CT Log Number 515216127

TO:     Jennifer Wayman
        CITIBANK, N.A.
        17400 Brookhurst St., Suite 201
        Fountain Valley, CA 92708

RE:     **Process Served in California**

FOR:    CR Title Services Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Leon Olshever, etc. and Holly Olshever, etc., Pltfs. vs. Citimortgage, Inc., etc., et al. including CR Title Services Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Complaint, Exhibit(s), Cover Sheet, Cover Sheet Addendum, Stipulation Form, Notice of Case Management Conference, Certificate of Service, Notice(s), List, Motion |
| **COURT/AGENCY:** | Los Angeles County, Superior Court, Van Nuys, CA<br>Case # LC086326 |
| **NATURE OF ACTION:** | Violation of Fiduciary Duty - For prohibiting any sale pursuant to the power of sale provided for in the deed of trust |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/30/2009 at 13:47 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // 1/06/09 at 8:30 a.m. - Status Conference // 12/21/09 at 8:30 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Henk Ten Brink<br>Henk Ten Brink Attorney at Law<br>3183 Wilshire Blvd.<br>Suite 196<br>Los Angeles, CA 90010<br>858 442 5351 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/30/2009, Expected Purge Date: 08/04/2009<br>Image SOP<br>Email Notification, Jennifer Wayman jennifer.wayman@citi.com<br>Email Notification, Sabrina Lemmon sabrina.lemmon@citi.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / WM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY |
| --- | --- |
| | (SOLO PARA USO DE LA CORTE) |
| | JUL 2 7 2009 |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CITIMORTGAGE, INC., a corporation,
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LEON OLSHEVER, an individual and HOLLY OLSHEVER, an
individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Los Angeles Superior Court, Northwest District
6230 Sylmar Ave., Van Nuys, CA 91401

| CASE NUMBER: |
| --- |
| (Número del Caso:) |
| LC086326 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Henk ten Brink Attorney at Law, 3183 Wilshire Blvd., Suite 196, Los Angeles, CA 90010, (858) 442-5351

DATE: 2 7 2009    JOHN A. CLARKE    Clerk, by _Angela Maryan_, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served    7/30/09 1:47pm

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✓] on behalf of *(specify):*  CR TITLE SERVICES, INC
   under: [✓] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| OLSHEVER et al v. CITIMORTGAGE, INC. et al | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

VERDUGO TRUSTEE SERVICE CORPORATION, a corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc., a corporation, CR TITLE SERVICES, INC. a corporation, FIRST AMERICAN TITLE INSURANCE COMPANY, a corporation, ALLSTATE BANCORP, INC., a corporation, MARK PRIMACK, an individual, LOS ANGELES COUNTY RECORDER, a public entity, and DOES 1-50, inclusive.

Page 1 of 1

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

1   **HENK TEN BRINK ATTORNEY AT LAW**                     JUL 2 7 2009
      Henk ten Brink, Esq. (SBN 247849)
2   3183 Wilshire Blvd., Suite196
   Los Angeles, CA 90010-1211
3   Tel. Number:  (818) 308-6230/(858) 442-5351
   Fax Number:  (818) 332-1162
4   Email: henk@tenbrinkesquire.com

5   Attorney for Plaintiffs LEON OLSHEVER and HOLLY OLSHEVER

6                 **SUPERIOR COURT OF CALIFORNIA**

7                   **COUNTY OF LOS ANGELES**

8                                         LC086326

9   LEON OLSHEVER, an individual,          )  CASE NO. _____

10  HOLLY OLSHEVER, an individual,         )

11                 Plaintiffs,    )  **COMPLAINT FOR DECLARATORY**
                               )  **ORDER, INJUNCTION AND**
12     vs.                                 )  **DAMAGES**

13                                  )

14  CITIMORTGAGE, INC., a corporation,     )  1.  Declaratory Order

15  VERDUGO TRUSTEE SERVICE                )  2.  Injunction

16  CORPORATION, a corporation,            )

17  MORTGAGE ELECTRONIC                    )  3.  Damages in Tort for Violation of
                                )      Fiduciary Duty
18  REGISTRATION SYSTEMS, Inc., a          )

19  corporation,                           )  4.  Damages in Tort for Fraud

20  CR TITLE SERVICES, INC. a              )  5.  Damages in Tort for Elder Abuse

21  corporation,                           )
                                )  6.  Damages in Tort for Intentional
22  FIRST AMERICAN TITLE                   )      Infliction of Emotional Distress

23  INSURANCE COMPANY, a                   )  7.  Damages in Tort for Negligence

24  corporation,                           )

25  ALLSTATE BANCORP, INC., a              )
                                )  Assigned to the Honorable *KADDO*
26  corporation,                           )
                                )  Dept. *NW - I*
27  MARK ALAN PRIMACK, an                  )

28

                                        1

1  **HENK TEN BRINK ATTORNEY AT LAW**
       Henk ten Brink, Esq. (SBN 247849)
2  3183 Wilshire Blvd., Suite196
   Los Angeles, CA 90010-1211
3  Tel. Number: (818) 308-6230/(858) 442-5351
   Fax Number: (818) 332-1162
4  Email: henk@tenbrinkesquire.com

5  Attorney for Plaintiffs LEON OLSHEVER and HOLLY OLSHEVER

6                **SUPERIOR COURT OF CALIFORNIA**

7                **COUNTY OF LOS ANGELES**

8

9  LEON OLSHEVER, an individual,               )    CASE NO. _____
                                               )
10 HOLLY OLSHEVER, an individual,              )
                                               )    **COMPLAINT FOR DECLARATORY**
11              Plaintiffs,                     )    **ORDER, INJUNCTION AND**
                                               )    **DAMAGES**
12     vs.                                      )
                                               )
13                                              )
                                               )    1.  Declaratory Order
14 CITIMORTGAGE, INC., a corporation,          )
                                               )    2.  Injunction
15 VERDUGO TRUSTEE SERVICE                     )
                                               )    3.  Damages in Tort for Violation of
16 CORPORATION, a corporation,                 )        Fiduciary Duty
                                               )
17 MORTGAGE ELECTRONIC                         )    4.  Damages in Tort for Fraud
                                               )
18 REGISTRATION SYSTEMS, Inc., a               )
                                               )    5.  Damages in Tort for Elder Abuse
19 corporation,                                )
                                               )    6.  Damages in Tort for Intentional
20 CR TITLE SERVICES, INC. a                   )        Infliction of Emotional Distress
                                               )
21 corporation,                                )    7.  Damages in Tort for Negligence
                                               )
22 FIRST AMERICAN TITLE                        )
                                               )
23 INSURANCE COMPANY, a                        )
                                               )
24 corporation,                                )
                                               )
25 ALLSTATE BANCORP, INC., a                   )
                                               )    Assigned to the Honorable _____
26 corporation,                                )
                                               )    Dept. _____
27 MARK ALAN PRIMACK, an                       )

28

                                1
                    **COMPLAINT FOR DAMAGES**

individual,                                    )
LOS ANGELES COUNTY                             )
RECORDER, a public entity, and                 )
DOES 1-50, inclusive,                          )
                                               )
                    Defendants.                )

                Plaintiffs allege:

## I    PARTIES AND JURISDICTION

1.  Plaintiff LEON OLSHEVER is an adult citizen of the State of California, resident in the County of Los Angeles, California, and above 65 years of age.

2.  Plaintiff HOLLY OLSHEVER is an adult citizen of the State of California, resident in the County of Los Angeles, and above 65 years of age.

3.  On information and belief: At all times relevant hereto Defendant CITIMORTGAGE, INC., ("CMI"), was, (and still is), a corporation organized under the California Corporations Code transacting business in the County of Los Angeles, California.

4.  On information and belief: At all times relevant hereto Defendant VERDUGO TRUSTEE SERVICE CORPORATION, ("Verdugo"), was, (and still is), a corporation organized under the California Corporations Code transacting business in the County of Los Angeles, California.

5.  On information and belief: At all times relevant hereto Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), was, (and still is), a corporation organized under the California Corporations Code transacting business in the County of Los Angeles, California.

6.  On information and belief: At all times relevant hereto Defendant CR TITLE SERVICES, INC., ("CR Title Services"), was, (and still is), a corporation organized under the California Corporations Code transacting business in the County of Los Angeles, California.

2

7. On information and belief: At all times relevant hereto Defendant FIRST AMERICAN TITLE INSURANCE COMPANY, ("First American"), was, (and still is), a corporation organized under the California Corporations Code transacting business in the County of Los Angeles, California.

8. On information and belief: At all times relevant hereto Defendant ALLSTATE BANCORP, INC., ("Allstate"), was, (and still is), a corporation organized under the California Corporations Code transacting business in the County of Los Angeles, California.

9. At all times relevant hereto Defendant MARK ALAN PRIMACK, ("Primack"), was an adult citizen of the State of California, resident and employed /doing business in the County of Los Angeles, California, (and on information and belief, he still is).

10. Defendant LOS ANGELES COUNTY RECORDER, ("the County Recorder"), is a public entity of and for the County of Los Angeles, California.

11. Plaintiffs are ignorant of the true names of the defendants designated herein as DOES 1-50, and therefore designate these defendants by the aforementioned fictitious names.

12. As and when Plaintiffs may discover the true name(s) of (any of) the defendants designated herein as DOES 1-50, Plaintiffs will amend this complaint accordingly.

13. On information and belief: Each of DOES 1–50 is responsible in some manner for the occurrences herein alleged.

14. On information and belief: Likewise each of DOES 1–50 proximately caused the damages suffered by Plaintiffs.

15. All the causes of action alleged herein have arisen in the State of California and in the County of Los Angeles.

16. All the detriment suffered by Plaintiffs was caused and suffered in the State of California and in the County of Los Angeles.

17. The real property in respect of which an injunction is sought herein is situated in the County of Los Angeles, California.

COMPLAINT FOR DAMAGES

18. Plaintiffs incorporate by this reference the contents of all exhibits attached to this complaint as though the complete contents of each are fully set forth herein.

## II    FACTUAL SETTING

19. At all times relevant hereto Plaintiffs were, (and still are), (as husband and wife/joint tenants), owners of real property located at 5348 Overing Drive, Woodland Hills, CA 91367, ("the Property"), described as:

> "Lot 18, of Tract No. 26660, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 774 Page(s) 96 to 98 of maps, in the office of the County Recorder of said county.
> ... ... ...
> Assessor's Parcel No: 2047-018-018", (omitting the part of the description pertaining to oil, minerals, *etc*, being non-pertinent).

20. On information and belief: At all times relevant hereto Allstate was licensed by the California Department of Real Estate as a Corporation; and moreover and as such:

1) doing business as, among other names, Renegotiation Center; and

2) employing/contracting Primack as one of its licensed salespersons.

21. On information and belief: At all times relevant hereto Primack was licensed by the California Department of Real Estate as a salesperson, and moreover and as such employed/contracted by Allstate.

22. On information and belief it is alleged that on December 7, 2005 Skyline Financial Corp., ("Skyline"), a lender, caused a trust deed securing an adjustable rate note for a loan to Plaintiffs in the amount of $655,000.00 to be recorded against the Property.

23. The loan application with Skyline was based on a combined gross monthly household income of $10,333.84.

24. The note in favor of Skyline provided for initial monthly payments of $2,106.97.

25. On information and belief: Subsequent to the recordation of the aforesaid trust deed Skyline assigned the note and trust deed to Countrywide Home Loans, Inc., ("Countrywide"), the date of the relevant recordation being March 16, 2007.

26. By January 2008 Plaintiffs' mortgage installment payments have increased, (and almost doubled), to more than $3,950.00 per month.

27. During January 2008 Plaintiffs received a written advertisement in letter form promoting a mortgage loan renegotiation service. A true and correct copy is attached as Exhibit 1.

28. On its face the letter emanated from an entity referring to itself as "Renegotiation Center".

29. The fact that the letter, (among other things):

1) had been authored by Renegotiation Center;

2) explicitly mentioned that Plaintiffs' mortgage "with Countrywide Home Loans Inc can be renegotiated", (underlining and double-underlining added), representing Renegotiation Center to Leon Olshever as a department of or within Countrywide and representing Renegotiation Center thereby to be privy to much more details regarding Plaintiffs' situation than would be obtainable from public records only;

3) was directed to Leon Olshever by name;

4) was addressed to the Plaintiffs' residential address;

5) made explicit reference to an/the amount of $731,000, (i.e. the amount then owing to Countrywide under the note in question), serving also to confirm Renegotiation Center's position as that of an entity privy to much more details regarding Plaintiffs' situation than would be obtainable from public records only;

6) contained an "Eligibility Number" printed thereon in bold;

7) explicitly mentioned that the offer was "good until February 7, 2008"; and

8) explicitly mentioned that "this offer could substantially lower your monthly payments";

were , (on information and belief as to the state of mind of the author of the letter in question), meant to cause Plaintiffs to believe, and reasonably and in fact did cause Plaintiffs to believe, (among other things):

9) that their situation, (*i.e.* Plaintiffs' situation), had been well researched;

10) that the offer was a firm offer; and

11) that it would indeed result in an identifiable benefit to them (as Plaintiffs).

30. The letter invited Leon Olshever to call a certain toll free number and to make reference to the aforementioned eligibility number. The letter did not contain the name of any individual, (apart from the name of Leon Olshever himself as the addressee).

31. Upon accepting the invitation to call and by taking advantage of the offer contained in the letter by calling the telephone number in question while the offer was still open, (*i.e.* before February 7, 2008), and by/upon making reference to the eligibility number, it became clear to Plaintiffs that Primack was the individual associated with the specific solicitation in question. Later it also transpired that Renegotiation Center was a department of Allstate, and not of Countrywide.

32. Plaintiffs mentioned telephonically to Primack, (among other things):

1) the fact that Leon Olshever was now retired;

2) the fact that Leon Olshever's retirement was without pension;

3) the fact that Plaintiffs' monthly mortgage payments had gone up while their income had gone down, (decreasing the gap by more than $8,000.00 per month over the last few years);

4) the various amounts making up Plaintiffs' gross total monthly household income, ($4,016.00), at the time, (*i.e.* $2,080.00 towards Leon Olshever's SSI, $936.00 towards Holly Olshever's SSI, and $1,000.00 towards Holly Olshever's pension);

5) the various amounts making up Plaintiffs' living expenses;

6) the fact that they, (*i.e.* Plaintiffs), had been dipping into their very limited resources in order to make payment of the monthly mortgage payments;

6

7) the fact that they, (*i.e.* Plaintiffs), had been of the view that they would be able to "make it" if only their monthly mortgage payments could be $600.00 less;

8) the fact that Plaintiffs had no prospect of receiving any more or any other income during the remainder of their lives, except for minimal SSI adjustments; and

9) the fact that they, (*i.e.* Plaintiffs), would sell their home as quickly as possible in a market that had by then already started to decline, so as to derive the maximum possible benefit of their equity in the Property if it should transpire during the processing of the loan application that Plaintiffs would not be able to, (for as long as Plaintiffs may live, or for the full term of the note/mortgage/product/package Primack was marketing), make all the scheduled loan payments. (Plaintiffs' equity in the Property has already shown a decline, on information and belief, of $200,000.00 to $300,000.00 over the last year.)

33. On February 5, 2008 Leon Olshever signed a document entitled "Rate Lock Confirmation" and returned same to Primack. A true and correct copy is attached as Exhibit 2.

34. Informing Plaintiffs, among other things, that "(t)his is not a commitment to make you a loan", Exhibit 2 caused Plaintiffs then to believe that they, (Plaintiffs), were actually making application for a loan from Allstate. (2nd paragraph, 2nd line of Exhibit 2)

35. Although Plaintiffs had prior thereto been under the impression that Renegotiation Center was a department of Countrywide, (and not a department of Allstate), and moreover that the offer entailed a renegotiation of Plaintiffs' loan with Countrywide, (and not an application for a new loan), Primack's assurances to Plaintiffs then, (and also repeated thereafter during the remainder of the process), to the effect that he, (*i.e.* Primack), was able and committed to serving Plaintiffs best interests by presenting them with the best option available to them, and by negotiating the best terms with the lender, indeed served to comfort Plaintiffs and caused them to put and express to Primack their trust in him.

36. On or about February 5, 2008, or shortly thereafter, Plaintiffs signed a document entitled "Borrower's Certification & Authorization" and returned same to Primack. A true and correct copy is attached as Exhibit 3.

37. Exhibit 3 reaffirmed to Plaintiffs that they, (Plaintiffs), were making application for a new loan with Allstate, (and not having their existing renegotiated). (1st paragraph numbered "1", [1st line] and 2nd paragraph numbered "1", [whole paragraph], of Exhibit 3)

38. To the extent that the words "I/We completed a loan application ..." in paragraph 1 of the certificate attached as Exhibit 3 may be understood to convey that Plaintiff/s had completed the loan application in person, the certificate is inaccurate. To the extent applicable, and to the full extent of Primack requesting same from Plaintiffs, Plaintiffs furnished all the "various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities" to Primack telephonically and by fax/mail on Primack's request. In turn Primack, (or, on information and belief, someone on his behalf), completed the loan application.

39. The information Plaintiffs furnished to Primack telephonically and the documents Plaintiffs furnished to Primack by fax/mail as aforesaid, were true and complete, contained no misrepresentations, and contained no omissions of "any pertinent information".

40. Moreover Primack requested specific documentation from Plaintiffs in an undated letter, a copy of which is attached hereto as Exhibit 4. In response to Exhibit 4 Plaintiffs indeed furnished Primack, to Primack's expressed satisfaction, by fax/mail with all the applicable documentation as requested.

41. In particular the documentation furnished to Primack in response to Exhibit 4 included Plaintiffs' bank statements, a letter from Aetna and a document entitled "Request for Verification of Deposit". Plaintiffs bank statements enabled Primack to establish the accuracy of the amounts of Plaintiffs' income as furnished to Primack, (and as set out in paragraph 32 above). The letter to Aetna and the "Request for Verification of Deposit" served to inform Primack of all Plaintiffs other capital and cash resources, respectively comprising of the cash

value of a Whole Life Policy with Aetna, (amounting to $35,277.28 at the time), and the balance of Plaintiffs' checking account, (amounting to $94,091.00 at the time).

42. Although Plaintiffs never met Primack before escrow, Primack had telephonic contact with Plaintiffs until the closing of escrow, informing Plaintiffs of his actions in the matter, and reassuring Plaintiffs that he would soon be in a position to present Plaintiffs with a final product that would suit all Plaintiffs' needs and fit their situation.

43. During April 2008 Plaintiffs were informed that their loan application had been approved, and that the mortgage payments would be $3,359.38 per month. It was $599.00 less than the mortgage payments to Countrywide, thus effectively meeting Plaintiffs' own stated goal of saving $600.00 on their mortgage payments. By then it had also transpired that the lender would be CMI, and not Allstate, (although the identity of the lender did not matter to Plaintiffs).

44. Shortly after approval of the loan application, escrow closed, (April 24, 2008), at Plaintiffs' home. Primack was present at the time of escrow.

45. At the time of escrow Plaintiffs had a multitude of documents to sign. It was insisted upon as against Plaintiffs that they were simply to sign each page where indicated. Moreover the hurried fashion in which the next pages were handed to Plaintiffs to sign served very effectively as a real pressure to bear upon Plaintiffs to sign the documentation without reading them. It also defeated the very purpose of the few terse explanations given, (when given), regarding the nature of some of the documents at hand.

46. Plaintiffs nevertheless trusted all the documentation to be true and accurate in all respects, and had no reason to distrust any person involved or to believe that any of the papers would not be true and correct in all respects. Plaintiffs expressed to the notary and Primack the fact that they trusted all the paper work to be in order, and indeed signed the papers without reading them, (and without even having seen them prior to escrow even).

47. On information and belief: Pursuant to the closing of escrow, and upon CMI's request to do so, the County Recorder recorded a Deed of Trust as Instrument No. 20080765752, ("Deed of Trust"), to secure the obligations of Plaintiffs' note regarding the loan in question.

48. A copy of the Deed of Trust delivered to Plaintiffs at the time of escrow, (the original of which Plaintiffs signed at the time of escrow), is attached hereto as Exhibit 5. A copy of the "Fixed/Adjustable Rate Note", ("Note"), delivered to Plaintiffs at the time of escrow, (the original of which Plaintiffs signed at the time of escrow), is attached hereto as Exhibit 6.

49. Pursuant to the Deed of Trust:

    1) Leon Olshever and Holly Olshever are the borrowers/trustors;

    2) CMI is defined as the "Lender", (and as such CMI is the creditor for whose real benefit the Property is to serve as security);

    3) MERS is the beneficiary, and acting solely as a nominee of CMI and its successors and assigns; and

    4) Verdugo is the trustee.

50. Towards the end of the year 2008 it became clear to Plaintiffs that their own stated goal of saving $600.00 on their mortgage payments was clearly insufficient, since Plaintiffs still had to put too much reliance on their limited alternative resources in order to supplement their income so as to be able to make the mortgage payments. Plaintiffs realized that they would be unable to sustain it for much longer.

### First Cause of Action
### Declaratory Order
### Against: CMI, Verdugo, MERS, CR Title Services, First American and the County Recorder

51. Plaintiffs incorporate by this reference paragraphs 1 – 50 above and also paragraphs 114 – 119 below as though fully set forth herewith.

52. The Property is Plaintiffs' principal dwelling, (and has been so ever since 1974).

53. By/with the Deed of Trust CMI acquired a security interest in the Property.

54. CMI failed to deliver two copies of a/the notice of the right to rescind to each of Plaintiffs.

55. Accordingly, (pursuant to Regulation Z. 12 C.F.R. § 226.23 (2007), ("Regulation Z"), issued pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1635(a) (2006)), both Plaintiffs have the right to rescind the note in question.

56. Leon Olshever's acknowledgment, (as evidenced by his signature appended on the original of Exhibit 7 at the time of escrow), to the effect that he had received two copies of the "Notice of Right to Cancel" is incorrect. Likewise Holly Olshever's acknowledgment, (as evidenced by her signature appended on the original of Exhibit 8 at the time of escrow), to the effect that she had received two copies of the "Notice of Right to Cancel" is incorrect. The same holds true of the acknowledgment of both Leon Olshever as well as Holly Olshever on the "Borrower's Agreements, Acknowledgments and Certifications" signed at the time of escrow. One copy of Leon Olshever's "Notice of Right to Cancel" and one copy of Holly Olshever's "Notice of Right to Cancel" were simply left behind at the time of escrow. Apart from the fact that it was not even tantamount to leaving behind two copies of each notice, it was not even tantamount to delivery of a single notice to any individual in particular at all. A copy of each of the two notices left behind, (the copy left behind being unsigned as to the notice as well as to the acknowledgment it contains), is attached hereto as Exhibits 7 and 8 respectively. A copy of the "Borrower's Agreements, Acknowledgments and Certifications" left behind is attached hereto as Exhibit 9.

57. Accordingly Plaintiffs' right to rescind shall expire three years after consummation, upon transfer of all of Plaintiffs' interest in the Property, or upon sale of the Property, whichever occurs first.

58. Plaintiffs have neither transferred all or any of their interest in the Property nor have they sold the Property.

59. Accordingly Plaintiffs' right to rescind shall expire three years after consummation, (*i.e.* April 24, 2011).

60. On information and belief: On or about January 26, 2009 Plaintiffs' attorney sent a letter by prepaid certified mail to the address elected by CMI for purposes of any cancellation/rescission. In this manner Plaintiffs exercised their respective rights to cancel/rescind in writing. A true and correct print out/copy of the letter in question is attached hereto as Exhibit 10. On information and belief: The addressee actually received Exhibit 10 on February 2, 2009.

61. As a consequence of the rescission the Deed of Trust became void, and the Plaintiffs are not liable for any amount, including any finance charge.

62. The Deed of Trust, (in section 22), according to its letter, provides for a so-called power of sale, *i.e.* it provides for CMI to have the Property sold in a non-judicial foreclosure sale in the event of a default on the part of one or both Plaintiff/s, provided certain formalities have been followed.

63. The first formality before the power of sale may be invoked pertains to the giving of notice following Plaintiff/s' "breach of any covenant or agreement in this Security Instrument", (*i.e.* the Deed of Trust). Pursuant to the Deed of Trust the notice has to specify the default itself, and, among other things also, that a failure to cure the default complained of in the notice may result in acceleration of the sums secured by the Deed of Trust.

64. On information and belief: On or about March 16, 2009 CMI purported to give notice to Plaintiffs alleging a default on Plaintiffs' part. A copy of the purported notice is attached as Exhibit 11. Exhibit 11's mere mention that:

> "the above referenced loan is in default. Payments have not been made as required by the note or deed of trust (the "Security Instrument"). Refer to the note and Security instrument for additional information"

falls short of the requirement of the Deed of Trust itself. The Deed of Trust requires that the default be specified, not merely that it be mentioned.

65. The second formality before the power of sale may be invoked pertains to the execution and recordation of "a written notice of the occurrence of an event of default and of (CMI)'s election to cause the Property to be sold", (*i.e.* the recordation of a so-called NOD).

66. On information and belief: On or about April 23, 2009 CR Title Services executed a purported NOD and on or about April 27, 2009 CR Title Services caused the purported NOD to be recorded as the Deed of Trust, (according to its letter), requires to be done with an NOD. On information and belief: In so doing CR Title Services acted "as agent for the beneficiary by First American Title Insurance, Co., as authorized agent". A true and correct copy of the NOD is attached as Exhibit 12.

67. The third formality before the power of sale may be invoked pertains to the giving of public notice of the sale. CMI must wait 90 days after recordation of the NOD before it can give public notice of the sale. The public notice of sale must be for a period of 20 days.

68. Plaintiffs have good reason to believe that either CMI, (as creditor), or Verdugo, (as Trustee under the Deed of Trust), or MERS, (as beneficiary and/or as nominee of and for CMI), or CR Title Services, (as agent of and for CMI, MERS, or Verdugo), or First American, (as agent of and for CMI, MERS, Verdugo or CR Title Services), will:

    1) proceed with the giving of a public notice of sale (upon the expiration of the 90 day waiting period);

    2) indeed proceed with the sale itself; and

    3) cause the Trust Deed to be issued upon the sale, (the so-called "Trust Deed Upon Sale"), to be recorded by the County Recorder;

unless an injunction be issued to prohibit same.

69. Plaintiffs have good reason to believe that the County Recorder will indeed record the Trust Deed Upon Sale if so requested by CMI, MERS, Verdugo, CR Title Services, First American or any of their agents, unless an injunction be issued to prohibit same.

70. As a consequence of the rescission the Deed of Trust became void however, and consequently the Plaintiffs are not liable for any amount either, (including any finance charge).

71. As a consequence of the rescission the Deed of Trust, CMI had to take any action necessary to reflect the termination of the security interest, (*i.e.* the Deed of Trust), within 20 calendar days after receipt of a notice of rescission.

72. On information and belief: Despite a demand to CMI upon the expiration of the 20 calendar day period in question to take any action necessary to reflect the termination of the security interest, CMI has failed, and persists with its failure, to do so.

73. In the absence of a valid or enforceable Deed of Trust Plaintiffs simply could not and cannot, (as a matter of law), breach "any covenant or agreement in this Security Instrument", (*i.e.* the Deed of Trust).

74. In the premise that Plaintiffs could not and cannot, (as a matter of law), breach "any covenant or agreement in this Security Instrument", (*i.e.* the Deed of Trust), CMI could not and cannot, (as a matter of law), give valid notice specifying any default at all. Likewise it could not and cannot enforce any acceleration.

75. In the absence of a valid or enforceable notice regarding a default on Plaintiffs part, and in the absence of a valid or enforceable acceleration, CMI could not and cannot, (as a matter of law), execute or record a valid NOD.

76. In the absence of a valid and enforceable executed and recorded NOD, none of the further steps in the non-judicial foreclosure proceedings, (*i.e.* the public notice of sale, the sale itself, the execution and recordation of a Trust Deed Upon Sale, *etc*), can, (as a matter of law), be valid or enforceable.

77. In the above premises, and with due regard also to paragraphs 114 – 119 below, (either on account of the fact that Plaintiffs had been induced to sign and thereby become party to the Note and Deed of Trust fraudulently, or on account of a lack of consensus between the parties regarding the Note and Deed of Trust, [in respect of 1) to 9) below)], and/or on account of a failure to comply with the provisions of Regulation Z, [in respect of 2) to 9) below)]), a declaratory order ought to be issued in terms whereof it be declared:

1) that the Fixed/Adjustable Rate Note signed by Leon Olshever and Holly Olshever in the city of Los Angeles, California on April 24, 2008, in respect of a purported loan in the amount of $750,000.00 by CitiMortgage, Inc. to Leon Olshever and Holly Olshever is or shall be invalid, unenforceable and of no legal effect whatsoever;

2) that the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 is or shall be invalid, unenforceable and of no legal effect whatsoever;

3) that no past or future notice pursuant to Section 22 of the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 notifying or purporting to notify Leon Olshever or Holly Olshever of any breach of any covenant or agreement in the said Instrument No. 20080765752 is or shall be valid or enforceable or of any legal effect whatsoever;

4) that no past or future execution or recordation of any written notice purporting to give notice of an occurrence of an event of default regarding a covenant or agreement in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 and/or of an election pursuant to any provision of the said Instrument No. 20080765752 to sell the Property to which the said Instrument No. 20080765752 (purportedly) pertains, is or shall be valid or enforceable or subject to recordation by the Los Angeles County Recorder or of any legal effect whatsoever;

5) that no past or future public notice of sale regarding a sale of the Property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 (purportedly) pertains, is or shall be valid or enforceable or of any legal effect whatsoever;

6) that no past or future sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752, is or shall be valid or enforceable or of any legal effect whatsoever;

7) that no Deed of Trust, (or so-called Trust Deed Upon Sale), that may be executed pursuant to a sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752, is or shall be valid or enforceable or subject to recordation by the Los Angeles County Recorder or of any legal effect whatsoever;

8) that the taking of any step or the performing of any act in or towards a non-judicial sale in foreclosure of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates or purporting to amount to an exercise of a power of sale pursuant the aforesaid Instrument No. 20080765752 or purporting to amount to an exercise of any power which would be a necessary power derived from a power of sale pursuant to the aforesaid Instrument No. 20080765752 or purporting to amount to a perfecting of anything done in respect of a power of sale pursuant the aforesaid Instrument No. 20080765752, is or shall be invalid and unenforceable and of no legal effect whatsoever;

9) that the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 and also the recordation thereof, are invalid and unenforceable and of no legal effect whatsoever; and

10) that Leon Olshever and Holly Olshever are the legal and equitable owners as husband and wife and as joint tenants in fee simple of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates, and entitled to recordation accordingly.

**Second Cause of Action**
**Injunction**
**Against: CMI, Verdugo, MERS, CR Title Services, First American and the County Recorder**

78. Plaintiffs incorporate by this reference paragraphs 1 – 77 above as though fully set forth herewith.

79. In the above premises an injunction ought to be issued:

1) against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company.: prohibiting the giving of any notice pursuant to Section 22 of the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 notifying or purporting to notify Leon Olshever or Holly Olshever of any breach of any covenant or agreement in the said Instrument No. 20080765752;

2) against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company.: prohibiting the execution of and also a request for the recordation of any written notice giving notice or purporting to give notice of an occurrence of an event of default regarding a covenant or agreement in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 and/or of an election pursuant to any provision of the said Instrument No. 20080765752 to sell the Property to which the said Instrument No. 20080765752 (purportedly) pertains; and as against the Los Angeles County Recorder: prohibiting the recordation of a written notice as aforesaid;

3) against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company.: prohibiting the giving of any public notice of sale regarding a sale of the Property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 (purportedly) pertains;

17

4) Against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc. , CR Title Services, Inc. and First American Title Insurance Company.: prohibiting any sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752;

5) against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company.: prohibiting the execution of a Deed of Trust, (or so-called Trust Deed Upon Sale), pursuant to a sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752;

6) against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company.: prohibiting a request for the recordation of a Deed of Trust, (or so-called Trust Deed Upon Sale), pursuant to a sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752; and as against the Los Angeles County Recorder: prohibiting the recordation of a Deed of Trust, (or so-called Trust Deed Upon Sale), as aforesaid;

7) against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc., First American Title Insurance Company and the Los Angeles County Recorder, prohibiting the taking of any step or the performing of any act in or towards a non-judicial sale in foreclosure of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates or purporting to amount to an exercise of a power of sale pursuant the aforesaid Instrument No. 20080765752 or purporting to amount to an exercise of any power which would be a necessary

1    power derived from a power of sale pursuant to the aforesaid Instrument No.

2    20080765752 or purporting to amount to a perfecting of anything done in respect of

3    a power of sale pursuant the aforesaid Instrument No. 20080765752;

8) against Verdugo Trustee Service Corporation and the Los Angeles County Recorder: ordering the cancellation of the recordation of the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752; and

9) against Verdugo Trustee Service Corporation and the Los Angeles County Recorder, ordering the conveyance and recordation into the name of Leon Olshever and Holly Olshever as husband and wife and as joint tenants in fee simple of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates.

### Third Cause of Action
### Damages in Tort for Violation of Fiduciary Duty
### Against: CMI, Allstate and Primack

80. Plaintiffs incorporate by this reference paragraphs 1 – 79 above as though fully set forth herewith.

81. Allstate and Primack, (licensed by the California Department of Real Estate as aforesaid to do so), brokered, promoted and sold, (on information and belief), a variety of mortgage products for a number of different lending institutions.

82. More in particular Allstate and Primack brokered, promoted and sold for and on behalf of CMI and for the benefit of themselves as well as CMI the various mortgage products CMI made available from time to time, (or some of CMI's mortgage products at least).

83. On information and belief: In brokering, promoting and selling mortgage products, Primack acted as agent for both Allstate itself as well as Allstate's principal/s.

84. Primack and Allstate did not act as agents for Plaintiffs. Allstate was acting as an independent contractor of Plaintiffs.

85. By negotiating the loan in question with CMI, Primack and Allstate were providing brokerage services to Plaintiffs.

86. Plaintiffs reposed a confidence in Primack.

87. By and when negotiating the loan in question with CMI, Primack and Allstate owed a fiduciary duty to Plaintiffs.

88. At the time Primack arranged the loan in question:

    1) Primack knew, (on information and belief), that the interest rate applicable to the loan could increase to a rate as high as 10.375% per year, (*i.e.* $6,484.38 per month), and in fact as soon as May 1, 2013 even; and

    2) Primack knew, (subjectively and as an actual fact), that Plaintiffs, apart from minimal adjustments to SSI, had no prospect of earning more in the future than their then current (gross) earnings of $4,016.00 per month;

89. On information and belief: At the time Primack arranged the loan in question, neither Primack nor anyone else employed by or acting for Allstate or CMI in any capacity whatsoever reasonably believed that Plaintiffs would be able to make the scheduled payments to repay their obligation, (and in fact Primack, and everyone else employed by or acting for Allstate or CMI in any capacity whatsoever and responsible for approval of the loan knew that Plaintiffs would be unable to), based upon a consideration of their then current and expected income, their then current obligations, their employment status, their other financial resources and/or any other then existing or anticipated future circumstances relevant to their then existing or future ability to make payments.

90. Primack started out with Plaintiffs' case on the basis that it would be a full documentation loan application, (*i.e.* on the basis that it would be required of Plaintiffs to verify both income as well assets by means of supporting documentation).

91. Plaintiffs stated their total gross monthly household income at the time as $4,016.00, (*i.e.* $2,080.00 towards Leon Olshever's SSI, $936.00 towards Holly Olshever's SSI, and $1,000.00 towards Holly Olshever's pension). Supporting documentation Plaintiffs furnished to Primack verified/supported the correctness and completeness of the income and sources stated by Plaintiffs as aforesaid.

92. At the time of escrow Plaintiffs (unknowingly) signed a document entitled "Borrower(s) Acknowledgment of Stated Income Amount Used to Qualify for a Mortgaged Product". A true and correct copy thereof is attached hereto as Exhibit 13.

93. The statement on Exhibit 13 to the effect that Plaintiffs' monthly income amounted to $15,334.00 was false, (as established hereinbefore). At the time of signing Exhibit 13 Plaintiffs did not realize that they were signing a statement regarding their income, and even less did they realize that the very document they were signing misstated their income. Had Plaintiffs' read the document in question, Plaintiffs would have deferred to the wisdom of the warnings contained in the very document itself, and would have refused to sign it.

94. At the time of escrow Plaintiffs also (unknowingly) signed a document entitled "Residential Loan Application", ("Application"). At the time of signing the document in question Plaintiffs had in fact already signed the Note and Deed of Trust to which the whole transaction pertained. Quite apart from the fact that Plaintiffs did not realize at the time of signing the Application that they were in effect signing the Application "after the fact", *(i.e. after executing the Note and Deed of Trust)*, Plaintiffs had no knowledge that the Application stated their income as $15,334.00 per month. Had Plaintiffs' read the Application they would have refused to sign it. Plaintiffs have no recollection of signing any application prior thereto. A true and correct copy of the Application is attached hereto as Exhibit 14.

95. Plaintiffs' account number with/at CMI is: 00200515881. CMI's name, ("CitiMortgage 3.2 13.21 v1"), at the bottom of every page of the Application and Plaintiffs' account number "00200515881" at the top of every page of the Application individualized the Application as one belonging to CMI.

96. The Application, (at the very beginning thereof), reads: "This application is designed to be completed by the applicant(s) with the Lender's assistance."

97. By and when making use of a loan application form in which the lender informs (prospective) applicants of the lender's (acceptance of a) duty to render "Lender's assistance" to the borrower/s/applicant/s in connection with the completion of the form, the lender, (in this

case CMI), accepts a fiduciary duty towards the borrower/s/applicant/s, (in this case Plaintiffs), (if indeed CMI did not have a fiduciary duty in respect thereof irrespective thereof in any event).

98. Plaintiffs did not complete/fill in the Application or any of the information on it at all. Plaintiffs furnished Primack with all the information and documentation needed to complete/fill in the Application. On information and belief: Primack, or someone in Allstate's office on Primack's behalf, completed/filled in the Application in its entirety. In these premises:

    1) either: Primack, (and consequently also Allstate), by completing/filling in the Application, acted as CMI's agents in respect of the assistance to be rendered by CMI regarding the completion of the form;

    2) or: CMI altogether failed in its duty to render assistance to Plaintiffs in connection with the completion/filling in of the Application.

99. Quite apart from the information which was available to CMI on account of the documentation required by and furnished to Primack pursuant to Primack's request in initiating the loan application as a full documentation loan application, the Application itself also clearly showed:

    1) (correctly so), that Plaintiffs were 76 and 75 years of age respectively;

    2) (correctly so), that Plaintiffs were a retired couple;

    3) (correctly so, if it be accepted as a number rounded to the nearest $1,000.00), that the amount of the existing lien/s was $731,000.00;

    4) (correctly so), (apart from the fact that they were retired), that Plaintiffs were not self-employed;

    5) (correctly so), (apart from the fact that they were retired), that Plaintiffs were not otherwise employed whatsoever; and

    6) (incorrectly so), that Plaintiffs' purpose had been: "Limited Acshout", (sic - "Limited Cash Out"). Plaintiffs' stated purpose was a lowering of mortgage

payments. Primack mentioned to Plaintiffs that he would be able to attain for Plaintiffs a limited cash out as well, (which seemed to Plaintiffs a welcome and attractive bonus outcome, and one definitely not to be turned down).

100.    It was also clear:

1) (as a matter of public record), that the only lien against the Property had been the then existing mortgage securing Plaintiffs' loan with Countrywide;

2) (as a matter of public record), that the only lien then recorded against the Property had been recorded as a lien of $655,000.00;

3) (as a natural consequence of the aforementioned and the contents of Exhibit 1), that the principal outstanding under the then existing lien recorded against the Property had increased approximately $76,000.00 over a period of approximately 15 months;

4) (as a matter of simple mathematics and the Settlement Statement), that the cash out could maximally have amounted to $3,094.10, (amounting to as little as 0.4125% of the total loan amount, and as much as 19.33% of the closing cost). (To date Plaintiffs have not received payment of any cash out or any part thereof at all.) A true and correct copy of the Settlement Statement is attached hereto as Exhibit 15.

101.    On information and belief the practice of processing and approving mortgage loan applications in reliance upon (an) applicant/s' statements regarding income without documentary verification developed as a means to accommodate self-employed loan applicants with so-called 1099 income who may find it cumbersome to furnish exact information regarding their income. On information and belief CMI was aware of this.

102.    On information and belief the stated income loan application practice came to be abused by brokers and lenders wishing to turn a so-called blind eye to applicants whose income disqualified them for the loans they applied for, giving rise to so-called predatory lending practices and toxic loans. On information and belief CMI was aware of this.

103.    On information and belief: By processing and approving the Application as a stated income application, (alternatively, by allowing the Application to be processed and

approved as a stated income application), CMI, Primack and Allstate turned a so-called blind eye to the facts and circumstances referred to in paragraphs 99 and 100 above.

104.    In so doing CMI, Primack and Allstate acted in violation of their fiduciary duties towards Plaintiffs. The aforesaid conduct of CMI, Primack and Allstate was a substantial factor in causing Plaintiffs harm.

105.    Approving the loan in question did not result in an identifiable benefit to Plaintiffs. By approving the loan in question or by allowing it to be approved whilst it did not result in any benefit as aforesaid, CMI, Primack and Allstate acted in violation of their fiduciary duties towards Plaintiffs. The aforesaid conduct of CMI, Primack and Allstate was a substantial factor in causing Plaintiffs harm.

106.    On information and belief: Neither Primack nor anyone else employed by or acting for Allstate or CMI in any capacity whatsoever reasonably believed that Plaintiffs would be able to make the scheduled payments to repay their obligation.

107.    By approving the loan in question whilst neither Primack nor anyone else employed by or acting for Allstate or CMI in any capacity whatsoever reasonably believed that Plaintiffs would be able to make the scheduled payments to repay their obligation, CMI Primack and Allstate acted in violation of their fiduciary duties towards Plaintiffs. The aforesaid conduct of CMI, Primack and Allstate was a substantial factor in causing Plaintiffs to suffer harm.

108.    As a direct and proximate result of the aforesaid violations of their fiduciary duties, CMI, Primack and Allstate caused Plaintiffs to suffer detriment entitling them to actual, general, special and / or compensatory damages in a sum according to proof.

109.    Moreover: On information and belief: CMI, Primack and Allstate knowingly or willfully changed the loan from a full documentation loan to a stated income loan with the intent or effect of evading their fiduciary duties and or with the intent of enabling themselves to furnish fraudulent but plausible denials in respect of Plaintiffs' (in)ability to make payments

and/or (the lack of) any identifiable benefit/s which would result for the Plaintiffs on account of the loan.

110.    On information and belief Plaintiffs allege that in respect of each and everyone of the commissions and omissions perpetrated by CMI, Primack and/or Allstate as envisaged in all and any of the paragraphs above, (either by itself and/or in conjunction with any one or more or all of the other commissions and omissions as aforesaid), CMI, Primack and Allstate have been guilty of oppression, malice and fraud within the meaning of §3294 of the California Civil Code, and more in particular:

1) that CMI, Primack and Allstate have been guilty of malice in that the commissions and omissions complained of were intended by CMI, Primack and Allstate to cause injury to Plaintiffs and because they amounted to despicable conduct carried on by them with a willful and conscious disregard of the rights of Plaintiffs;

2) that CMI, Primack and Allstate have been guilty of oppression in that the commissions and omissions complained of amounted to despicable conduct subjecting Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights; and

3) that CMI, Primack and Allstate have been guilty of fraud in that they intended each and every commission and omission perpetrated as aforesaid to serve as an intentional misrepresentation, deceit, or concealment of a material fact known to them with the intention on their part of thereby depriving Plaintiffs of their rights or otherwise causing Plaintiffs injury.

111.    In the above premises, and apart from Plaintiffs' right to recover actual, general, special and / or compensatory damages, Plaintiffs are also entitled to recover damages for the sake of example and by way of punishing CMI, Primack and Allstate.

112.    On information and belief: CMI, Primack and Allstate profited from their aforesaid conduct at Plaintiffs' expense.

113.      In the above premises, and apart from Plaintiffs' right to recover damages, Plaintiffs are entitled to an order for the disgorgement of all profits earned by CMI, Primack and Allstate in an amount according to proof.

## Fourth Cause of Action
## Damages in Fraud
## Against: CMI, Allstate and Primack

114.      Plaintiffs incorporate by this reference paragraphs 1 – 112 above as though fully set forth herewith.

115.      Each and everyone of the commissions and omissions perpetrated by CMI, Primack and/or Allstate as envisaged in all and any of the paragraphs above, (either by itself and/or in conjunction with any one or more or all of the other commissions and omissions as aforesaid), constituted (an) act/s fitted to deceive Plaintiffs. By perpetrating the aforesaid commissions and omissions CMI, Primack and Allstate:

1) (on information and belief), intended to induce Plaintiffs into the closing of escrow and into executing the Note and Deed of Trust;

2) represented to Plaintiffs that Plaintiffs would be able to make the scheduled payments to repay their obligation, whilst, (on information and belief), believing or knowing that Plaintiffs would not be able to do so;

3) (on information and belief), intended to deceive Plaintiffs into believing that Plaintiffs would be able to make the scheduled payments to repay their obligation;

4) represented to Plaintiffs that the loan would result in an identifiable benefit to Plaintiffs, whilst, (on information and belief), believing or knowing that the loan would not result in an identifiable benefit to Plaintiffs; and

5) (on information and belief), intended to deceive Plaintiffs into believing that the loan would result in an identifiable benefit to Plaintiffs.

116.      Plaintiffs reasonably relied on the representations referred to in paragraph 115 above to their detriment, and closed escrow on account thereof.

117.    Had Plaintiffs been aware of the fact that they would not have been able to make the scheduled payments to repay their obligation and/or of the fact that that the loan would not result in an identifiable benefit to them, Plaintiffs would not have closed escrow and Plaintiffs would have sold their home as quickly as possible in a market that had by then already started to decline, so as to derive the maximum possible benefit of the equity they then still had in the Property. As herein established, CMI, Primack and Allstate fraudulently induced Plaintiffs to sign and thereby become party to the Note and Deed of Trust, alternatively their fraudulent actions complained of herein precluded consensus between the parties to the Note and Deed of Trust.

118.    As a direct and proximate result of the fraud perpetrated by CMI, Primack and Allstate as aforesaid, Plaintiffs suffered detriment.

119.    Save to the extent that Plaintiffs' damages in respect of this cause of action may amount to a duplication of damages with reference to damages proved in respect of the third cause of action, Plaintiffs are entitled to actual, general, special and / or compensatory damages in a sum according to proof, including damages for the sake of example and by way of punishing CMI, Primack and Allstate.

### Fifth Cause of Action
### Elder Abuse
### Against: CMI, Allstate and Primack

120.    Plaintiffs incorporate by this reference paragraphs 1 – 119 above as though fully set forth herewith.

121.    On information and belief: CMI, Primack and Allstate used the confidence Plaintiffs had reposed in Primack for the purpose of obtaining an unfair advantage over Plainitiffs, (*i.e.* to enter into [a] transaction/s with Plaintiffs beneficial to CMI, Primack and Allstate whilst knowing that the very same transaction/s would be at Plaintiffs expense and would have no identifiable benefit to Plaintiffs).

122.    More in particular the misuse of the confidence reposed by Plaintiffs in Primack was grossly oppressive in that it amounted to the taking of an unfair advantage of Plaintiffs' necessities and distress.

123.    Each and everyone of the commissions and omissions perpetrated by CMI, Primack and/or Allstate as envisaged in all and any of the paragraphs above, (either by itself and/or in conjunction with any one or more or all of the other commissions and omissions as aforesaid), amounted to elder abuse in respect of both Plaintiffs, and more in particular because the aforesaid way in which CMI, Primack and Allstate treated Plaintiffs resulted in mental suffering on the part of both Plaintiffs and because it amounted to financial abuse.

124.    The elder abuse complained of herein constituted financial abuse in that the commissions and omissions complained of herein amounted to the taking, secreting, appropriating and/or obtaining, (or in assistance to the taking, secreting, appropriating and/or obtaining), of Plaintiffs' real property and/or Plaintiffs' equity in the Property and/or Plaintiffs' money in the form of payments in respect of closing costs, *etc*, (including fees to CMI, Primack and Allstate and/or fees for the benefit of CMI, Primack and Allstate), for a wrongful use, (*i.e.* to benefit themselves at Plaintiffs' expense whilst there would be no benefit to Plaintiffs), and/or with intent to defraud and/or by undue influence.

125.    As a direct and proximate result of the elder abuse perpetrated by CMI, Primack and Allstate as aforesaid, Plaintiffs suffered detriment.

126.    Save to the extent that Plaintiffs' damages in respect of this cause of action may amount to a duplication of damages with reference to damages proved in respect of the third and fourth causes of action, Plaintiffs are entitled to actual, general, special and / or compensatory damages in a sum according to proof, including damages for the sake of example and by way of punishing CMI, Primack and Allstate.

127.    Moreover, on account of the fact that CMI, Primack and Allstate are liable to Plaintiffs for financial elder abuse, Plaintiffs are entitled to their reasonable attorney's fees and costs.

### Sixth Cause of Action
### Intentional Infliction Of Emotional Distress
### Against: CMI, Allstate and Primack

128.    Plaintiffs incorporate by this reference paragraphs 1 – 127 above as though fully set forth herewith.

129.    Each and everyone of the commissions and omissions perpetrated by CMI, Primack and/or Allstate as envisaged in all and any of the paragraphs above, (either by itself and/or in conjunction with any one or more or all of the other commissions and omissions as aforesaid), constituted extreme and outrageous conduct on the part of CMI, Primack and Allstate with, (on information and belief), the intention of causing, (or with a reckless disregard of the probability of causing), emotional distress on the part of Plaintiffs.

130.    Plaintiffs' suffered severe and extreme emotional distress including highly unpleasant mental and other physical reactions, such as depression, (requiring prescription drugs), shock, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, disturbed sleeping patterns, affected personal relationships, irritability, worry, stomach problems, (including nausea and a loose stomach), *etc.*

131.    The elder abuse perpetrated by CMI, Primack and Allstate as aforesaid is the actual and proximate cause of Plaintiffs' emotional distress.

132.    Save to the extent that Plaintiffs' damages in respect of this cause of action may amount to a duplication of damages with reference to damages proved in respect of the third – fifth causes of action, Plaintiffs are entitled to actual, general, special and / or compensatory damages in a sum according to proof, including damages for the sake of example and by way of punishing CMI, Primack and Allstate.

### Seventh Cause of Action
### Negligence
### In the alternative to the Third – Sixth Causes of Action
### Against: CMI, Allstate and Primack

133.    In the alternative to the third to sixth causes of action, and in the event that not all damages are allowed pursuant to the third to sixth causes of action, then and in such event Plaintiffs make the further allegations as set out below.

134.    Plaintiffs incorporate by this reference paragraphs 1 – 132 above as though fully set forth herewith.

135.    In the event it should be held that CMI, Primack and/or Allstate did not have any fiduciary duties towards Plaintiffs, Plaintiffs allege that the independent contractor relationship between Plaintiffs and CMI, and between Plaintiffs and Allstate, nevertheless brought about a duty of care for CMI, Primack and Allstate towards Plaintiffs.

136.    To the extent to which the content of fiduciary duties on the part of CMI, Primack and Allstate towards Plaintiffs have been pleaded in the third cause of action above, it also serves to describe the content of the duty of care CMI, Primack and Allstate owed towards Plaintiffs.

137.    To the extent to which the various violations of fiduciary duties on the part of CMI, Primack and Allstate have been pleaded in the third cause of action above, it also serves to describe the various breaches of the duty of care CMI, Primack and Allstate owed Plaintiffs.

138.    As a direct and proximate result of the various breaches of the duty of care CMI, Primack and Allstate owed Plaintiffs as complained of herein, Plaintiffs suffered detriment at the hands of CMI, Primack and Allstate.

139.    In the above premises Plaintiffs are entitled to actual, general, special and / or compensatory damages in a sum according to proof.

**WHEREFORE** Plaintiff Leon Olshever and Plaintiff Holly Olshever pray that judgment be entered:

1) For a declaratory order against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc.,

First American Title Insurance Company and the Los Angeles County Recorder, declaring:

    a.  that the Fixed/Adjustable Rate Note signed by Leon Olshever and Holly Olshever in the city of Los Angeles, California on April 24, 2008, in respect of a purported loan in the amount of $750,000.00 by CitiMortgage, Inc. to Leon Olshever and Holly Olshever is or shall be invalid, unenforceable and of no legal effect whatsoever;

    b.  that the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 is or shall be invalid, unenforceable and of no legal effect whatsoever;

    c.  that no past or future notice pursuant to Section 22 of the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 notifying or purporting to notify Leon Olshever or Holly Olshever of any breach of any covenant or agreement in the said Instrument No. 20080765752 is or shall be valid or enforceable or of any legal effect whatsoever;

    d.  that no past or future execution or recordation of any written notice purporting to give notice of an occurrence of an event of default regarding a covenant or agreement in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 and/or of an election pursuant to any provision of the said Instrument No. 20080765752 to sell the Property to which the said Instrument No. 20080765752 (purportedly) pertains, is or shall be valid or enforceable or subject to recordation by the Los Angeles County Recorder or of any legal effect whatsoever;

    e.  that no past or future public notice of sale regarding a sale of the Property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 (purportedly) pertains, is or shall be valid or enforceable or of any legal effect whatsoever;

f.  that no past or future sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752, is or shall be valid or enforceable or of any legal effect whatsoever;

g.  that no Deed of Trust, (or so-called Trust Deed Upon Sale), that may be executed pursuant to a sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752, is or shall be valid or enforceable or subject to recordation by the Los Angeles County Recorder or of any legal effect whatsoever;

h.  that the taking of any step or the performing of any act in or towards a non-judicial sale in foreclosure of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates or purporting to amount to an exercise of a power of sale pursuant the aforesaid Instrument No. 20080765752 or purporting to amount to an exercise of any power which would be a necessary power derived from a power of sale pursuant to the aforesaid Instrument No. 20080765752 or purporting to amount to a perfecting of anything done in respect of a power of sale pursuant the aforesaid Instrument No. 20080765752, is or shall be invalid and unenforceable and of no legal effect whatsoever;

i.  that the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 and also the recordation thereof, are invalid and unenforceable and of no legal effect whatsoever; and

j.  that Leon Olshever and Holly Olshever are the legal and equitable owners as husband and wife and as joint tenants in fee simple of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates, and entitled to recordation accordingly.

2) For an injunction:

    a.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company: prohibiting the giving of any notice pursuant to Section 22 of the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 notifying or purporting to notify Leon Olshever or Holly Olshever of any breach of any covenant or agreement in the said Instrument No. 20080765752;

    b.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company: prohibiting the execution of and also a request for the recordation of any written notice giving notice or purporting to give notice of an occurrence of an event of default regarding a covenant or agreement in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 and/or of an election pursuant to any provision of the said Instrument No. 20080765752 to sell the Property to which the said Instrument No. 20080765752 (purportedly) pertains; and as against the Los Angeles County Recorder: prohibiting the recordation of a written notice as aforesaid;

    c.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company: prohibiting the giving of any public notice of sale regarding a sale of the Property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 (purportedly) pertains;

    d.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc. , CR Title Services, Inc. and First

American Title Insurance Company: prohibiting any sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752;

e.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company, prohibiting the execution of a Deed of Trust, (or so-called Trust Deed Upon Sale), pursuant to a sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752;

f.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc. and First American Title Insurance Company: prohibiting a request for the recordation of a Deed of Trust, (or so-called Trust Deed Upon Sale), pursuant to a sale pursuant to the (purported) power of sale provided for in the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752; and as against the Los Angeles County Recorder: prohibiting the recordation of a Deed of Trust, (or so-called Trust Deed Upon Sale), as aforesaid;

g.  against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc., First American Title Insurance Company and the Los Angeles County Recorder: prohibiting the taking of any step or the performing of any act in or towards a non-judicial sale in foreclosure of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates or purporting to amount to an exercise of a power of sale pursuant the aforesaid Instrument No. 20080765752 or purporting to amount to an exercise of any power which would be a necessary power derived from a power of sale pursuant to the aforesaid Instrument No. 20080765752 or purporting to amount to a perfecting

of anything done in respect of a power of sale pursuant the aforesaid Instrument No. 20080765752;

h. against Verdugo Trustee Service Corporation and the Los Angeles County Recorder: ordering the cancellation of the recordation of the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752; and

i. against Verdugo Trustee Service Corporation and the Los Angeles County Recorder: ordering the conveyance and recordation into the name of Leon Olshever and Holly Olshever as husband and wife and as joint tenants in fee simple of the property to which the Deed of Trust recorded by the Los Angeles County Recorder as Instrument No. 20080765752 relates.

3) Against CitiMortgage, Inc., Allstate Bancorp, Inc., and Mark Alan Primack jointly and severally, for the payment of Leon Olshever's - and Holly Olshever's actual, general, special and / or compensatory damages in a sum according to proof;

4) Against CitiMortgage, Inc., Allstate Bancorp, Inc., and Mark Alan Primack jointly and severally, for the payment of damages for the sake of example and by way of punishing CitiMortgage, Inc., Allstate Bancorp, Inc., and Mark Alan Primack in a sum deemed just and equitable;

5) Against CitiMortgage, Inc., for the disgorgement of all profits earned by CitiMortgage, Inc. to Leon Olshever and Holly Olshever in a sum according to proof;

6) Against Allstate Bancorp, Inc., for the disgorgement of all profits earned by Allstate Bancorp, Inc. to Leon Olshever and Holly Olshever in a sum according to proof;

7) Against Mark Alan Primack, for the disgorgement of all profits earned by Mark Alan Primack to Leon Olshever and Holly Olshever in a sum according to proof;

8) Against CitiMortgage, Inc., Allstate Bancorp, Inc. and Mark Alan Primack jointly and severally, for Leon Olshever's - and Holly Olshever's reasonable attorney's fees and costs; and

9) Against CitiMortgage, Inc., Verdugo Trustee Service Corporation, Mortgage Electronic Registration Systems, Inc., CR Title Services, Inc., First American Title Insurance Company, Allstate Bancorp, Inc., Mark Alan Primack and the Los Angeles County Recorder, for such other further and/or alternative relief as the court may deem just.

## JURY DEMAND

Plaintiff Leon Olshever and Plaintiff Holly Olshever demand a jury trial on all issues so triable.

Dated: July __24__, 2009

Respectfully submitted
Henk ten Brink Attorney at Law

By: _____

Henk ten Brink
Attorney for Plaintiff Leon Olshever and Plaintiff Holly Olshever

## VERIFICATION

I, LEON OLSHEVER, declare as follows:

1.       I am one of the plaintiffs and have fully reviewed the foregoing Complaint under the above caption and I know and understand the contents thereof.

COMPLAINT FOR DAMAGES

2.      All the statements contained within the Complaint are true based upon my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: July, _____ 2009

LEON OLSHEVER

## VERIFICATION

I, HOLLY OLSHEVER, declare as follows:

3.      I am one of the plaintiffs and have fully reviewed the foregoing Complaint under the above caption and I know and understand the contents thereof.

4.      All the statements contained within the Complaint are true based upon my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: July, _____ 2009

HOLLY OLSHEVER

**COMPLAINT FOR DAMAGES**

# EXHIBIT 1

**RENEGOTIATION CENTER**
**RE: Countrywide Home Loans Inc**

**Eligibility Number: 400587E**

Leon Olshever
5348 Overing Dr
Woodland Hills CA 91367-5755

Leon Olshever,

Your Original Mortgage of $731,000 with **Countrywide Home Loans Inc** can be re-negotiated into a **5 Year Fixed at 5.875% (APR 5.923%)***. This offer is good until February 7, 2008. Take advantage of this offer today.

In addition, we may be able to **consolidate other debt** or get you cash out for **home improvements. Call (800) 942-5458 toll-free** and refer to Eligibility Number 400587E.

We have searched county records to make you this offer. This offer could substantially lower your monthly payments.

**CONTACT US IMMEDIATELY** EVEN IF YOU HAVE A <u>**PREPAYMENT PENALTY**</u>.

## Call us toll free at 1-800-942-5458
Mon-Fri 8:30 am- 7:30 pm, Sat 10:00 am- 3:00 pm, PST



EQUAL HOUSING
OPPORTUNITY

Se Habla Español

*APR rate quoted is approximate and is based on conforming loan limit. Rates, terms and loan amounts may vary on each loan subject to equity and qualification. This product or service has not been approved or endorsed by any government agency and this offer is not being made by any agency of the government. This solicitation is not sponsored by, affiliated with, or authorized by Countrywide Home Loans Inc. California Department of Corporations #603E144.

# EXHIBIT 2

# RATE LOCK CONFIRMATION

Date: 02/04/2008

Borrower(s): Leon and Holly Olshever

Address: 5348 Overing Dr. Woodland Hills, CA 91367

This is to confirm that the interest rate set forth below for your loan application with Allstate Bancorp was locked-in according to the terms below:

| Loan Type: | 7/1 Interest Only |
|------------|-------------------|
| Interest Rate: | 5.375 % |
| Expiration Date: | 03/04/2008 |

This Rate Lock Confirmation guarantees that the above Interest Rate will be available to you through the Expiration Date. This is not a commitment to make you a loan, and Allstate Bancorp, Inc. cannot guarantee that your loan application will be processed, approved, and closed by the Expiration Date. If the loan for which you have applied does not close by the Expiration Date above, the Interest Rate shown may no longer be available. Allstate Bancorp, Inc. and its associates or employees shall be held harmless from any liability resulting from failure to obtain said loan commitment.

A Non-Refundable fee is charged to guarantee your rate lock. This fee is ☐ Non-Applicable ☑ Applicable to your closing costs at time of the settlement of your loan.

This lock confirmation is only valid if Rate Lock Fee has been received and lock confirmation below has been completed by Allstate Bancorp's rate lock department.

I hereby authorize Allstate Bancorp and the bank to charge the amount below to my credit card account. I hereby confirm that I will pay the said amount, with any charges due thereon, to said issuer in accordance with the terms of the charge card agreement governing the use of the said card.

_Leon Olshever_                    2-5-08
Applicant's Signature              Date

Rate Lock Fee: $375

Credit Card: ☐ MC  ☑ VISA # 4121 - 7415 - 5552 - 4847

Expires: 1 / 10          3 digit code: 230

Name on Card: LEON OLSHEVER

Billing address: 5348 OVERING DR  City: WOODLAND HILLS State: CA
Zip: 91367

Loan Officer: Mark Primack

_____

Section below to be completed by Allstate Bancorp Lock Department

Allstate Bancorp confirms receipt of this Agreement and the Rate Lock Deposit and confirms that the interest rate on the Loan has been "locked in" at the Locked Rate specified above until the expiration date.

Allstate Bancorp, Inc. (to be completed only by Rate Lock Department)
By _____

# EXHIBIT 3

# BORROWER CERTIFICATION & AUTHORIZATION

## CERTIFICATION

1. I/We have applied for a mortgage loan from **ALLSTATE BANCORP, INC.** In applying for this loan, I/We completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. If this is a Streamline Program, I/we understand and agree that **ALLSTATE BANCORP, INC** reserves the right, to change the mortgage loan review process, at any time, to a partial or full documentation program. This may include verifying or reverifying the information provide on the application with employer and/or financial institution.

3. I/we fully understand that it is a federal crime, punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

## AUTHORIZATION TO RELEASE INFORMATION

To Whom It May Concern:

1. I/we applied for a mortgage loan from **ALLSTATE BANCORP, INC.** As part of the application process, may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or after closing as part of its or any third party investors quality control program.

2. I/we authorize you to provide **ALLSTATE BANCORP, INC** and to any investor to whom **THEY** may sell my/our mortgage, any and all information and documentation that they request. Such information includes, but it is not limited to, employment history and income, bank, money market and similar account balances, credit history, and copies of income tax returns.

3. **ALLSTATE BANCORP, INC** or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to **ALLSTATE BANCORP, INC**, or the investor that purchased is appreciated.

**Senior Loan Officer: Mark Primack**

_Leon Olshove_
BORROWER'S SIGNATURE

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
SOCIAL SECURITY NUMBER

CO-BORROWER'S SIGNATURE

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
SOCIAL SECURITY NUMBER

# EXHIBIT 4

Hello Leon and Holly,

In order for you to qualify for the lowest interest rate and payment, we require the following information. If you don't have everything right now, please provide what you have and send the rest as soon as possible.

**All documentation must be legible and needs to contain your name(s), statement dates, account (or social security) number(s), and institution name and address. Please do not "black out" any information.**

**Many statements have multiple pages. For example, if a page says, "1 of 5", we'll need all 5 pages. Here's what is required for the new loan:**

- copy of most recent mortgage statement for all properties owned
- copy of most recent hazard insurance declaration page for subject property
- copy of driver's license and social security card or 2nd picture I.D.
- copy of most recent bank, savings, investment, retirement, I.R.A., 401K, C.D., etc... showing liquid cash assets.

Please feel free to call me if you have any questions.

Sincerely,


**Mark Primack**
Senior Loan Consultant
**Allstate Bancorp**
800-942-5394 x 304 (direct)
800-348-0482 (fax)
mprimack@allstatebanc.com


6500 Wilshire Boulevard Suite 1200, Los Angeles, CA 90048

# EXHIBIT 5

Recording Requested By:
CitiMortgage, Inc.

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

Prepared By:
CitiMortgage, Inc.
7958 South Chester Street
Centennial, CO  80112

------------------------[Space Above This Line For Recording Data]------------------------

# DEED OF TRUST

MIN    100011520051528810

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 24, 2008
together with all Riders to this document.
(B) "Borrower" is Leon Olshever and Holly Olshever, Husband and Wife as Joint Tenants

Borrower's address is 5348 Overing Drive, Woodland Hills, CA  91367
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is  CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York

002005152881
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3005  1/01

Wolters Kluwer Financial Services
VMP ®-6A(CA) (0711)
Page 1 of 15                    Initials:_____

CitiMortgage 3.2.13.21 V1

Lender's address is 1000 Technology Drive, O' Fallon, MO  63368-2240

(D) "Trustee" is Verdugo Trustee Service Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated April 24, 2008
The Note states that Borrower owes Lender Seven Hundred Fifty Thousand

Dollars

(U.S. $750,000.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 05/01/2038.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider          [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider               [ ] Biweekly Payment Rider          [X] Other(s) [specify]
                                                                   Schedule "A"

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

002005152881
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP®-6A(CA) (0711)                                Page 2 of 15        Initials:_____
                                                                        CitiMortgage 3.2.13.21 V1

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                                        of Los Angeles                                    :

        [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

See Schedule A Attached Hereto And Made A Part Thereof

Parcel ID Number:                                    which currently has the address of
5348 OVERING DRIVE                                                          [Street]
WOODLAND HILLS                           [City] , California  91367-5755   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

002005152881

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

VMP ®-6A(CA) (0711)                          Page 3 of 15        Initials:_____

                                          CitiMortgage 3.2.13.21 V1

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

002005152881

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP ®-6A(CA) (0711)                          Page 4 of 15       Initials:_____

CitiMortgage 3.2.13.21 V1

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

002005152881
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP ®-6A(CA) (0711)                              Page 6 of 15          Initials:_____

CitiMortgage 3.2.13.21 V1

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

002005152881

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01
VMP ®-6A(CA) (0711)                          Page 7 of 15        Initials:_____

CitiMortgage 3.2.13.21 V1

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

002005152881
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005   1/01
VMP ®-6A(CA) (0711)                          Page 8 of 15        Initials:

CitiMortgage 3.2.13.21 V1